UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RUBEN AUTHUR LUCERO,                                        No. 13-14-10406 TA

Debtor.

## MEMORANDUM OPINION ON VALUATION OF REAL PROPERTY

This matter is before the Court on two motions filed by the Debtor to value real property,[1] and the objections thereto filed by Mesa Financial of Las Vegas, Inc. ("Mesa Financial") and the Chapter 13 Trustee. The Court held a final hearing on the Motions and objections on May 15, 2014.

The Motions concern two residential lots in Pintada, New Mexico, a tiny hamlet about 25 miles southwest of Santa Rosa, New Mexico. For the reasons set forth below, the Court finds that one of the lots is worth $1,000. On agreement of the parties, the Court did not value the other lot, but will set a final hearing on the issue if requested by the Debtor or an objecting party.

I.    Facts

The Debtor filed this Chapter 13 bankruptcy case on February 13, 2014. Two weeks later he filed his bankruptcy schedules and statement of financial affairs. On Schedule A the Debtor listed three parcels of real property:

> 1. Equitable interest in residential real property owned by father's estate located in Pintada, New Mexico in Guadalupe County – lot with a 20' x 15' building. subj to lien of Joseph Riggs, III;

---

[1] Motion for Valuation of Collateral Held by Joseph N. Riggs, III, filed March 14, 2014, doc. 23, and Motion for Valuation of Collateral Held by Mesa Financial of Las Vegas, Inc., filed March 14, 2014, doc. 21 (together, the "Motions").

2. Lot in Pintada, New Mexico in Guadalupe County with a 2 story house. House is collapsing. subj. to lien of Mesa Financial of Las Vegas, NM; and

3. Vacant lot in Pintada, New Mexico in Guadalupe County.

The first parcel (the "Subject Lot") is the one valued herein. The second parcel (the "Stone House Lot") is discussed but is not valued. The remaining lot is neither valued nor discussed. Neither the Subject Lot nor the Stone House Lot is the Debtor's primary residence.

The legal description of the Subject Lot is:

A tract of land Thirty-seven (37) yards long beginning and running south to north 37 yards long, and east to west 22 yards wide, bounded on the south by lands of Emilia B. Padilla, on the west by lands of Emilia B. Padilla, on the north by lane, and on the east by lands of Salome Martinez, and located in Lot One of Section 31, in Township 8 North of Range 18 East of the New Mexico Meridian, New Mexico.

Being the same land conveyed by Emilia B. Padilla to Esequiel Lucero by deed bearing date the 7th day of April, 1941, of record in Vol. 34, Page 103 of the Warranty Deed Records of said County.

On or about March 28, 2002, the Debtor signed a Note and Security Agreement in favor of Mesa Financial, evidencing a loan of $1,607.11. The stated interest rate was 33.83%. To secure the loan, the Debtor executed a Real Estate Mortgage on March 28, 2002, encumbering his interest in the following real property:

A tract of land within Section 31, Township 8 North, Range 18 East, N.M.P. Guadalupe County, New Mexico.

(the "Mortgage").

On September 15, 2009 Mesa Financial brought a foreclosure action against the Debtor and others, seeking to foreclose the Mortgage. The Debtor did not answer the complaint. The case was assigned to state district court judge Eugenio S. Mathis. Although Judge Mathis dismissed the case three times due to Mesa Financial's failure to prosecute, the case was reinstated each time at Mesa Financial's request. Finally, Judge Mathis entered a Default

Judgment and Final Decree of Foreclosure on October 17, 2012. The default judgment ordered, inter alia, the foreclosure sale of the Subject Lot, notwithstanding the discrepancy in the legal description between the Mortgage and the Subject Lot. No special master's sale has yet been held. The judgment amount was $10,748.46.

The Subject Lot is fenced with a barbed wire fence and has a locked metal gate. There is conflicting evidence about the size of the lot. According to the legal description in the quitclaim deed, the lot is 111 feet by 66 feet, or 7,326 square feet (.168 acres). The appraiser retained by Mesa Financial described the lot as having dimension of 80 feet by 70 feet, or 5,600 square feet (.128 acres). The Court finds that the dimensions set out in the deed are more reliable.

The Subject Lot is improved with a wood frame structure that is attached to a 1970s single-wide mobile home. The structure (excluding the mobile home) is about 15 feet by 20 feet, and it is heated by a wood-burning stove. The structure is in poor condition. The mobile home is not permanently affixed to the real estate and also is in poor condition. The structure and the mobile home both have roof leaks. The mobile home has a rodent problem.

The Subject Lot has electrical service. There is no telephone, gas, sewer, or water service. The village has a community well, but the water is not potable. Potable water may be available by digging a deep well, which would be expensive. When the Debtor lived on the Subject Property (from about 1995-2002), he hauled potable water from Santa Rosa.

To comply with applicable law, any person buying the Subject Lot for residential use would have to install a septic system. Currently, sewage is handled by a cesspool. Installation of a septic system would cost between $4,500-$6,000.

Mesa Financial retained Roland Medrano to appraise the Subject Lot. Mr. Medrano issued an appraisal report dated as of May 8, 2014. Mr. Medrano testified at the final hearing as

an expert witness, and opined that the value of the Subject Lot was $6,000. He also opined that without the mobile home, the lot was worth $4,000-$4,500.

Mr. Medrano relied on the comparable sales method of valuing real estate. Since he could not find any evidence of recent sales of lots in or near Pintada, he used three sales of land in Roy, New Mexico, 85 miles away. Each of the Roy parcels was subdivided into mobile home lots. One of the parcels also had RV hookups. Mr. Medrano did not say how large the comparable parcels were; the only indication of size was the number of mobile home lots (between 27 and 50) on each parcel.

The Debtor testified that in his opinion the current fair market value of the Subject Lot is $250, which is the amount listed on his bankruptcy schedules. The Debtor testified that there is very little sales activity in Pintada, and that when a lot owner wishes to sell his or her lot, a relative usually buys the lot for very little money. The Debtor also testified that the land around Pintada had been owned by the Lucero family since before New Mexico became a territory, and that his relatives own most of the four or so inhabited dwellings in Pintada.

For property tax purposes, Guadalupe County, New Mexico valued the Subject Lot at $960.

This is the Debtor's third bankruptcy case in the last three years. He filed a Chapter 7 case on April 19, 2011, no. 11-11751-j7, and received a discharge on July 26, 2011. In that case the Debtor listed one parcel of real property, described as "Undeveloped Land, Property #1001231701151171933, Guadalupe County." The Debtor valued the parcel at $960. The Court cannot tell if this parcel is the Subject Lot, the Stone House Lot, both lots, or another lot.

The Debtor's second case, a Chapter 13 case, was filed on August 21, 2013, case no. 13-12754-j13. The case was dismissed November 5, 2013 for failure to make plan payments. The Debtor's Schedule A in the second case listed no real property, a disturbing omission.

The Debtor disputes Mesa Financial's claimed mortgage on the Subject Lot. The basis for the dispute twofold. First, the Debtor asserts he does not own the lot, but only has an "equitable interest." Second, the Debtor asserts that the mortgage he signed in favor of Mesa Financial does not grant a mortgage on the Subject Lot, but rather on the Stone House Lot. Mesa Financial disputes both assertions. The Court does not rule here on the ownership of the Subject Lot or the validity Mesa Financial's asserted mortgage on the lot. This opinion is limited to the value of the Subject Lot.

## II. Discussion

A. Bifurcation of Undersecured Claims.

Section 506(a)(1)[2] provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Accordingly, the amount of a secured claim cannot exceed the value of the estate's interest in the underlying property.

---

[2] All statutory references are to 11 U.S.C.

-5-

Case 14-10406-t13    Doc 45    Filed 05/23/14    Entered 05/23/14 11:40:14 Page 5 of 11

The Debtor may seek to determine the value of a secured creditor's collateral (and therefore the amount of the secured claim) by filing a valuation motion. Such motions are authorized by Fed.R.Bankr.P. 3012:

Rule 3012. Valuation of Security

The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

Once valued, the Debtor may propose a plan that pays the creditor's secured claim in full and treats the balance of the claim as a general unsecured claim. Section 1322(b)(2) provides:

subject to subsection (a) and (c) of this section, the plan may—
…
modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

The Court may confirm a Chapter 13 plan over the objection of a creditor with a lien on real property other than the debtor's primary residence if: (i) the creditor retains its lien; and (ii) the value to be paid to the creditor is equal to the amount of its secured claim. Section 1325(a)(5)(B). *See also* Collier on Bankruptcy ¶ 506.03[7][c][i] (plan is confirmable if secured creditor retains its lien and will receive payments equal to present value of its allowed secured claim).

In accordance with the foregoing, the Debtor's Chapter 13 plan states that any claims secured by the Subject Lot will be bifurcated, with the secured portion being paid through the plan with interest at 6%, and the unsecured portion being treated as a general unsecured claim.

B.  Valuation Rules.

When valuing property pursuant to 11 U.S.C. § 506(a), the "'proposed disposition or use' of the collateral is of paramount importance . . . ." *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 962 (1997) citing Section 506(a)(1). *See also In re Heritage Highgate, Inc.,* 679 F.3d 132, 141 (3d Cir. 2012) (citing *Rash,* the Third Circuit stated that "the appropriate standard for valuing collateral must depend upon what is to be done with the property—whether it is to be liquidated, surrendered, or retained by the debtor."). *See also* 11 U.S.C. § 506(a)(1) ("Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest").

If the debtor intends to retain a creditor's collateral, the proper value is fair market value, rather than liquidation or foreclosure value. *Heritage Highgate,* 679 F.3d at 142, citing *In re Winthrop Old Farm Nurseries*, 50 F.3d 72, 75 (1st Cir. 1995); *In re Adam Aircraft Industries, Inc.,* 2013 WL 773044 at *5 (D. Colo. 2013); *In re Castleton Plaza, LP,* 2011 WL 4621123 at *3 (Bankr. S.D. Ind. 2011); *In re Mayslake Village-Plainfield Campus, Inc.,* 441 B.R. 309, 320-21 (Bankr. N.D. Ill. 2010) (the court used full fair market value or replacement value, because a chapter 11 debtor intended to retain and operate the property). In this case, the Debtor plans to keep the Subject Lot and there is no dispute that the proper way to value the Property is to determine its full fair market value, rather than using a liquidation, distressed sale, or similar discounted value.

The timing of valuation is often crucial in determining an appropriate value. "[J]urisdictions generally choose from four valuation dates [depending on the purpose of the valuation]: (1) the date of confirmation; (2) the date of the petition; (3) the date of the valuation

hearing; or (4) the effective date of the plan." *In re Hales,* 493 B.R. 861, 864 (Bankr. D. Utah 2013); *see also Wood v. LA Bank (In re Wood),* 190 B.R. 788, 790–91 (Bankr. M.D. Pa. 1996) (collecting cases reaching various decisions regarding the appropriate valuation date). In general, collateral is to be valued as of the effective date of the plan. *In re Garn,* 2013 WL 5723746, at *1 (Bankr. D. Utah 2013) ("most cases, covering all reorganization chapters and types of collateral, have unsurprisingly decided that the confirmation date is generally the appropriate valuation date when dealing with cramdown valuation for confirmation purposes"); *In re Methvin,* 11 B.R. 556, 557 (Bankr. S.D. Miss. 1981).

"[V]aluation is not an exact science." *In re Centennial Park, LLC,* 2011 WL 5520968, at *2 (Bankr. D. Kan. 2011), quoting *In re Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1354 (5th Cir. 1989). *See also In re Hoch*, 2009 WL 2252144, at *2 (Bankr. D. Kan. 2011), citing *In re Weichey,* 405 B.R. 158, 165 (Bankr. W.D. Pa. 2009) (courts are given wide latitude in determining value because the valuation of real property is less than exact science); *Consolidated Rock Prods. Co. v. Du Bois,* 312 U.S. 510, 5526 (1941) (determinations of value in the bankruptcy context do not rise to the level of "mathematical certitude").[3] The Court must therefore do its best based on first-hand witness observations and carefully weigh the evidence presented before it. This is particularly true here, where there does not appear to be an active market from which to draw comparable sales.

Despite its imprecision, valuation is an integral part of the bankruptcy process. *Sandy Ridge Dev.,* 881 F.2d at 1354; *In re Pac. Lumber Co.,* 584 F.3d 229. 248-49 (5th Cir. 2009) citing

---

[3] *See generally* Aristotle, *Nicomachean Ethics*, Book 1, § 3 (W.D. Ross trans. 1908) ("It is the mark of an educated [person] to look for precision in each class of things just so far as the nature of the subject admits; it is evidently equally foolish to accept probable reasoning from a mathematician and to demand from a rhetorician scientific proofs."

-8-

*Sandy Ridge Dev.* Because of its importance, the Court must do its best to arrive at a reasonable value, despite all difficulties with precision.

C.  Value of the Subject Lot.

The Court finds that the mobile home is not permanently affixed to the Subject Lot, and therefore is not encumbered by any mortgage on the lot. Because of that, the three indications of value are: (i) Mr. Medrano's opinion of value without the mobile home ($4,000-$4,500); (ii) the Debtor's opinion ($250); and (iii) the county's assessed value ($960).

The Court does not give much weight to Mr. Medrano's opinion of value, for several reasons. First, Mr. Medrano assumed, incorrectly, that the mobile home should be included in the value of the Subject Lot. While Mr. Medrano was able to give the Court an opinion about the value of the Subject Lot without the mobile home, including the mobile home in his valuation did not help his credibility. Second, Mr. Medrano's use of the Roy properties as comparables is unpersuasive. Although Roy is a small, rural town, it is a sprawling metropolis compared to Pintada, which has only a handful of residents. It is hard to see how parcels subdivided into mobile home lots in Roy are at all comparable to the Subject Lot. Third, Mr. Medrano's adjustments in value were unpersuasive. For example, he increased the value of each comparable by $3,500 because those parcels did not have water. In fact, the Subject Lot does not have water either, nor ready access to potable water. It probably would be easier to provide the Roy parcels with potable water than the Subject Lot. If so, the value adjustment should have gone the other way. Further, no explanation was given about the amount of the other adjustments or why they were appropriate. Finally, Mr. Medrano's calculation of the size of the Subject Lot seems wrong, given the legal description.

Case 14-10406-t13    Doc 45    Filed 05/23/14    Entered 05/23/14 11:40:14 Page 9 of 11

The Court also places little weight on the Debtor's opinion of value. Although he lived on the Subject Lot for seven yours, the Debtor gave no support for his valuation except to point out the problems with the Subject Lot and its improvements. While the Debtor's observations appear valid, it is not clear that the result should be a lot with almost no value. In addition, the differences among the Debtor's three sets of bankruptcy schedules in the land he says he owns, and its value, hurts Debtor's credibility.

The Court finds that Guadalupe County's assessed valuation is the most reliable and accurate.

All things considered, the Court finds that the fair market value of the Subject Lot is $1,000. The Court further finds that the value is stable, so it makes no difference whether the valuation date is the petition date, today's date, or the confirmation date.

### III.     Conclusion

The Court finds and concludes for the purposes of this Chapter 13 case that the fair market value of the Subject Lot is $1,000. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 23, 2014.

Copies to:

Bonnie Gandarilla
3800 Osuna Road, NE, #2
Albuquerque, NM 87109

William J. Cooksey
2040 Fourth Street, NW
Albuquerque, NM 87102

Kelley Skehen
625 Silver Ave., SW, #350
Albuquerque, NM 87102